## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

AGATHA and MALCOLM COOPER,
Parents, individually and on behalf of
J.N, Student,

       Plaintiffs,

       v.                                       Civ. No. 19-1141 SCY/SMV

BOARD OF EDUCATION OF
ALBUQUERQUE PUBLIC SCHOOLS,
and NEW MEXICO PUBLIC
EDUCATION DEPARTMENT,

       Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING MOTION TO DISMISS

Plaintiffs Agatha and Malcolm Cooper bring this action individually and on behalf of their son, J.N., a child with autism, who they allege was physically restrained multiple times while attending Albuquerque Public Schools ("APS") during the 2017-18 and 2018-19 school years. They now seek injunctive relief for J.N. and the class of students like J.N. against the New Mexico Public Education Department ("NMPED"). Presently before the Court is NMPED's Motion to Dismiss this claim. Doc. 20. The Court finds that Plaintiffs have failed to state a claim against NMPED and therefore grants NMPED's motion and dismisses Plaintiffs' claim for injunctive relief against NMPED. The Court, however, also grants Plaintiffs' request for an opportunity to amend the complaint.

## BACKGROUND

Taking all Plaintiffs well-pleaded facts as true, the Court sets forth the factual background for this case. J.N. is an eight-year-old boy who has autism and anxiety. Doc. 1 ¶¶ 30,

31. In August 2017, J.N. started kindergarten at Bandelier Elementary School, in the Albuquerque Public Schools District. *Id.* ¶ 12, 44. J.N.'s parents, the Coopers, obtained a private evaluation of J.N. in July 2018, which diagnosed him with autism. *Id.* ¶ 46. The Coopers provided APS with J.N.'s autism diagnosis and requested identification for special education. *Id.* ¶ 47. In December 2018, APS wrote J.N.'s first Individualized Education Plan ("IEP") and moved him to a special education program for students with autism at a different elementary school, Collett Park Elementary. *Id.*

During the 2017-18 and 2018-19 school years, staff at both Bandelier and Collett Park used physical restraints to respond to J.N.'s nonconforming behaviors. *Id.* ¶¶ 50-51. Bandelier Elementary never provided notice to the Coopers that staff used physical restraints on J.N., but the Coopers became aware of the use of restraints when they saw staff restraining J.N. and when J.N.'s brother saw him being restrained. *Id.* ¶¶ 51-52. When APS moved J.N. to Collett Park, staff assured the Coopers that restraints would not be used on J.N. *Id.* ¶ 53. However, the Coopers received written notice on two occasions that J.N. was restrained by Collett Park staff. *Id.* ¶ 51. The Coopers repeatedly explained to staff at Collett Park that J.N. was fearful and anxious about being held down and that he was injured physically and emotionally with each restraint. *Id.* ¶¶ 56. However, staff at Collett Park again physically restrained J.N. on January 22, 2019. *Id.* ¶ 57. The Coopers then decided to remove J.N. from Collett Park and began home-schooling him. *Id.* ¶¶ 57, 59.

After removing their son from APS, the Coopers filed a request for an administrative due process hearing against APS. Doc. 26-1 at 3-24. A Due Process Hearing Officer, Nancy Simmons, conducted a hearing over nine days in June, July and August 2019. *See id.* at 37-40,

97-108 (prehearing orders). The Due Process Hearing Officer found, in part, in favor of J.N. *Id.* at 265-325.

Following the administrative due process hearing ("DPH"), the Coopers filed the present suit in federal court on December 4, 2019. They bring claims for (1) damages for disability discrimination under Section 504 of the Rehabilitation Act against APS; (2) damages for negligence against APS; (3) attorney's fees for violation of the Individuals with Disabilities Education Act ("IDEA") against APS, in connection with the DPH;[1] and (4) injunctive relief for J.N. and a class of students like him against APS and NMPED based on disability discrimination under Section 504 of the Rehabilitation Act. Doc. 1. Plaintiffs also seek attorney's fees and costs against APS and NMPED under Section 504. *Id.*

After Plaintiffs filed their Complaint, Defendant NMPED responded with a Motion to Dismiss Plaintiffs' Complaint for Failure to State a Claim Upon Which Relief May Be Granted, filed February 27, 2020 (Doc. 20), and fully briefed May 26, 2020 (Docs. 24, 29). Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 16, 17, 18, 19.

## **STANDARD OF REVIEW**

Defendant NMPED filed its Motion to Dismiss under Rule 12(b)(6) for failure to state a claim. Doc. 20. Because NMPED has filed an answer to the Complaint, Doc. 11, a Rule 12(c) motion is appropriate rather than a motion to dismiss under Rule 12(b)(6). Rule 12(c) permits a litigant to file a motion for judgment on the pleadings after the pleadings have closed; that is,

---

[1] APS filed a separate suit in this Court, appealing the DPH Decision. *See* 19cv1126 KG/JHR. The parties have since settled that case and have informed the Court that the terms of that settlement, if approved, will also resolve all of Plaintiffs' claims against APS in the present case. *See* Doc. 45; Docs. 17 & 23 in 19cv1126 KG/JHR.

after the filing of the complaint and answer. The Court will construe NMPED's Motion to

Dismiss as a motion for judgment on the pleadings, because the difference is not material. "A

motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under

Rule 12(b)(6)." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th

Cir. 2000).

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for failure

to state a claim upon which the court can grant relief. "[T]o withstand a Rule 12(b)(6) motion to

dismiss, a complaint must contain enough allegations of fact, taken as true, to state a claim to

relief that is plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir.

2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a complaint

does not require detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, it

"requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do." *Twombly*, 550 U.S. at 555.

A court considering a challenge under Rule 12(b)(6) may proceed according to a "two-

pronged approach." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). First, a court "can choose to

begin by identifying pleadings that, because they are no more than conclusions, are not entitled

to the assumption of truth." *Id.* "While legal conclusions can provide the framework of a

complaint, they must be supported by factual allegations." *Id.* Second, "[w]hen there are well-

pleaded factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief." *Id.*

For purposes of this second prong, the Court "accept[s] the well-pled factual allegations

in the complaint as true, resolve[s] all reasonable inferences in the plaintiff's favor, and ask[s]

whether it is plausible that the plaintiff is entitled to relief." *Diversey v. Schmidly*, 738 F.3d 1196,

1199 (10th Cir. 2013) (internal citations and quotation marks omitted). "A claim is facially

plausible when the allegations give rise to a reasonable inference that the defendant is liable."

*Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). The court's consideration, therefore,

is limited to determining whether the complaint states a legally sufficient claim upon which the

court can grant relief. *See Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236

(10th Cir. 1999). The court is not required to accept conclusions of law or the asserted

application of law to the alleged facts. *See Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir.

1994). Nor is the Court required to accept as true legal conclusions that are masquerading as

factual allegations. *See Brooks v. Sauceda*, 85 F. Supp. 2d 1115, 1123 (D. Kan. 2000). The Court

must, however, view a plaintiff's allegations in the light most favorable to him. *Schrock v.

Wyeth, Inc*., 727 F.3d 1273, 1280 (10th Cir. 2013).

## DISCUSSION

Plaintiffs bring a proposed class action claim under Section 504 of the Rehabilitation Act

against NMPED for equitable and injunctive relief and attorney's fees and costs.[2] Doc. 1 ¶ 8.

Section 504 provides that

> No otherwise qualified individual with a disability in the United States . . . . shall,
> solely by reason of her or his disability, be excluded from participation in, be denied
> the benefits of, or be subjected to discrimination under any program or activity
> receiving Federal financial assistance or under any program or activity conducted
> by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). "To state a claim under Section 504, a plaintiff must prove (1) that he is a

handicapped individual under the Act, (2) that he is otherwise qualified for the [benefit] sought,

---

[2] NMPED acknowledges that Plaintiffs are not seeking damages against it, only equitable relief.
Doc. 20 at 13. However, NMPED argues that Plaintiffs have failed to meet the standard for
compensatory damages under Section 504, deliberate indifference. Doc. 20 at 12-13. Because
Plaintiffs are not seeking compensatory damages against NMPED, the Court need not address
this argument.

(3) that he was [discriminated against] solely by reason of his handicap, and (4) that the program or activity in question received federal financial assistance." *Cohon ex rel. Bass v. N.M. Dep't of Health*, 646 F.3d 717, 725 (10th Cir. 2011) (internal quotation marks omitted). In other words, Section 504 "requires that an otherwise qualified handicapped individual must be provided meaningful access to the benefits that the grantee offers." *Id.* at 726 (quoting *Alexander v. Choate*, 469 U.S. 287, 301 (1985)).

NMPED does not dispute that Plaintiffs pleaded elements one, two, and four of the prima facie case under Section 504; namely, that J.N. is a handicapped individual under the Act and is otherwise qualified for public education and that NMPED receives federal financial assistance. *See* Doc. 20 at 8; *see also* Doc. 1 ¶¶ 13, 14, 16, 31, 32 (allegations in the Complaint). Instead, NMPED argues that Plaintiffs failed to plead the third element of a prima facie case under Section 504 – whether NMPED discriminated against J.N. by reason of his disability.[3] *See* Doc. 20 at 8.

Plaintiffs allege that the New Mexico legislature enacted NMSA § 22-5-4.12 to limit and regulate the use of physical restraints in public school, effective June 2017. Doc. 1 ¶ 41. Over a year later, in July 2018, NMPED enacted a regulation (6.11.2.10(E) NMAC) to implement that state law. Doc. 1 ¶ 42. However, Plaintiffs allege that the regulation failed to mirror NMSA § 22-5-4.12, Doc. 1 ¶¶ 64, 65, 115, and that NMPED failed to monitor APS's compliance with NMSA § 22-5-4.12, Doc. 1 ¶ 63. Accordingly, Plaintiffs seek an order requiring NMPED to change its

---

[3] NMPED also makes several arguments to counter the merits of Plaintiffs' assertions that J.N. was denied access to public education and that it failed to timely implement regulations under NMSA § 22-5-4.12. *See* Doc. 20 at 9-11. At this stage, the Court is not addressing whether NMPED denied J.N. access to public education, but only whether Plaintiffs have stated a plausible claim against NMPED. Accordingly, the Court will not address evidence related to the merits of Plaintiffs' claim.

regulation to mirror NMSA § 22-5-4.12 and requiring NMPED to monitor APS's implementation of NMSA § 22-5-4.12. Doc. 1 ¶ 118.

As an initial matter, Plaintiffs' complaint that it took NMPED too long after the enactment of NMSA § 22-5-4.12 to pass its own related regulation is not actionable. *See* Doc. 1 ¶ 42. The relief Plaintiffs seek is "injunctive relief ordering changes in NMPED's regulation and its role in implementation and monitoring of NMSA 22-5-4.12 in the Albuquerque Public Schools." Doc. 1 ¶ 8. Seeking changes in a regulation is different than seeking the enactment of a regulation. What Plaintiffs seek are changes to a regulation already enacted. Their complaint that it took NMPED too long to enact this regulation does not relate to the relief they request (modification of the regulation) and, therefore, is not actionable.

With regard to changing the regulation enacted, Plaintiffs allege that when NMPED finally did enact a regulation, it failed to mirror NMSA § 22-5-4.12. Therefore, Plaintiffs argue, the regulation fails to implement state law. Doc. 1 ¶¶ 64, 65, 116. More specifically, Plaintiffs assert, "[r]egulations enacted by NMPED (effective July 2018) do not mirror or implement state law limiting and regulating physical restraints, and instead, tend to promote or gloss over use of physical restraints by public schools." Doc. 1 ¶ 64.

Importantly, Plaintiffs are not seeking to strike the NMPED regulation as *conflicting* with state law. Instead, the first part of their complaint is that the regulation does not "mirror or implement" state law. Absent from Plaintiffs' complaint is a citation to any statute or rule that requires NMPED to pass a regulation that mirrors state law. As a duly enacted state law, NMSA § 22-5-4.12 has independent force, which begs the question of why and whether NMPED has a legal duty to enact legislation that mirrors a state law already in place. Because Plaintiffs have

failed to allege or cite authority that NMPED has a legal duty to enact legislation that mirrors state law, Plaintiffs' complaint that NMPED failed to do so fails to state a claim.

Plaintiffs' assertion that NMPED failed to *implement* a state law related to public education is better positioned to gain traction. After all, NMPED is a state agency and NMSA § 22-5-4.12 addresses an area that NMPED regulates. Given this, it would not be surprising for NMPED to have a legal duty to pass a regulation that implements state law in its area. But, assuming NMPED has such a duty, Plaintiffs do not identify the source of that duty. And, without knowing exactly what the law requires NMPED to do, how can the Court evaluate whether NMPED has done enough?

Moreover, even if the Court had a yardstick available to measure the adequacy of NMPED's regulation, the Court could not apply this yardstick because Plaintiffs' Complaint contains nothing to measure—it does not specifically allege how NMPED's regulation is deficient. Plaintiffs generally allege that NMPED's regulation "tend[s] to promote or gloss over use of physical restraints by public schools" but do not explain how that regulation does so or even what part of the regulation does so. Plaintiffs do not point out where any provision contained in NMSA § 22-5-4.12 is missing from NMPED's regulation or where any provision of NMPED's regulation conflicts with what is in NMSA § 22-5-4.12. Indeed, despite making what amounts to a textual argument—that the text of NMPED's regulation conflicts with the text of NMSA § 22-5-4.12—Plaintiffs cite to no text in either provision. *See Twombly*, 550 U.S. at 555 (requiring "more than labels and conclusions").[4] Nor is it obvious. Comparing the entire text of

---

[4] Even if Plaintiffs' vague allegations that NMPED's regulation tends to promote and gloss over use of physical restraints by public schools were sufficient to merit injunctive relief, such vague allegations could only give rise to a vague injunction. In other words, even if Plaintiffs were to prevail, the Court would be left with issuing a vague injunction ordering NMPED to pass new regulations that do not promote or gloss over use of physical restraints by public schools.

NMSA § 22-5-4.12 and NMPED's regulation does not immediately reveal what parts of NMPED's regulation Plaintiffs might believe "promote" or "gloss over" the use of physical restraints. The regulation comprises over two single-spaced pages. The Court declines to pour through this regulation in search for text that might support Plaintiffs' general allegations that the regulation promotes or glosses over the use of physical restraints.

Further, even assuming NMPED had a legal duty to pass a regulation related to NMSA § 22-5-4.12 and that NMPED violated this duty by "glossing over" the requirements of NMSA § 22-5-4.12, Plaintiffs do not adequately allege how this violation states a claim under Section 504 of the Rehabilitation Act. As set forth above, to state a Section 504 claim Plaintiffs must show that NMPED discriminated against J.N. solely by reason of his handicap. Plaintiffs have cited no case in which a plaintiff has used Section 504 to enjoin a state agency to change a regulation that is generally directed to all students, rather than disabled students. Plaintiffs also have not alleged how NMPED's regulation, even though it is generally directed to all students, might nonetheless be designed to discriminate against students such as J.N. solely by reason of their handicap. The Complaint contains no facts which would establish that the difference between NMPED's regulation and NMSA § 22-5-4.12 caused harm to J.N. or other disabled students. In other words, even if the regulation does not exactly mirror state law, the regulation could still provide appropriate limitations regarding when physical restraints can and cannot be used on students. Plaintiffs provide no facts as to how the regulation and the state law are different, if that difference is material or contradictory, and if so, whether the contradictory regulation creates a conflict by superseding state law. Thus, Plaintiffs' general allegation that NMPED glossed over provisions in a state law that applies to all children, regardless of disability, falls short of stating a claim under Section 504.

Aside from the content of NMPED's regulation, Plaintiffs also allege that NMPED has failed to implement or monitor APS's compliance with NMSA § 22-5-4.12. Doc. 1 ¶ 63. But again, Plaintiffs fail to state what legal duty NMPED had to ensure that all school districts in the state appropriately implement NMSA § 22-5-4.12 in public schools. Although the Court expects that NMPED has some duty to regulate public schools throughout the state, the Court is constrained by the four corners of the Complaint, and the Complaint neither alleges that NMPED had a duty nor what the parameters of that duty might be. APS presumably has an independent duty to follow state laws. What, if any, duty NMPED has to ensure APS follows the law is not clear. Is NMPED liable for APS's failure to follow state law; if so, how? The Complaint does not provide an answer.

Assuming the existence of a duty, however, Plaintiffs also fail to set forth specifically how NMPED breached that duty. Other than vaguely asserting that NMPED's regulation promoted and glossed over use of physical restraints by public schools, Plaintiffs do not describe what NMPED should have, but did not do, to make sure APS complied with state laws. This lack of specificity leaves the Court with the potential for only a vague and difficult-to-enforce remedy. Because Plaintiffs do not allege what NMPED should have done, but did not do, to bring APS into compliance with state law, the Court has insufficient information to order NMPED to specifically do anything. Even if Plaintiffs stated a claim, the Court would be reluctant to generally order NMPED to start making sure APS complies with NMSA § 22-5-4.12, without defining exactly how APS is out of compliance and what the Court expects NMPED to do to bring APS into compliance.

And, while the Complaint contains conclusory allegations that APS did not comply with NMSA § 22-5-4.12, the Complaint does not set forth facts in this case from which a reasonable

jury could conclude that APS's restraint of J.N. violated NMSA § 22-5-4.12.[5] Plaintiffs do not

claim that use of physical restraint *necessarily* violates NMSA § 22-5-4.12. Indeed, one only has

to turn on the news for evidence of mass shootings or other events at schools that indisputably

require the use of physical restraint. NMSA § 22-5-4.12 allows for restraint in these and other

situations. It states in its first subsection:

> A. A school may permit the use of restraint or seclusion techniques on any
> student only if both of the following apply:
> (1) the student's behavior presents an imminent danger of serious physical
> harm to the student or others; and
> (2) less restrictive interventions appear insufficient to mitigate the
> imminent danger of serious physical harm.

NMSA § 22-5-4.12. Although all factual inferences must be drawn in Plaintiffs' favor, here,

Plaintiffs allege no facts related to the use of physical restraint on J.N that can be drawn in their

favor. If J.N.'s behavior presented an imminent danger of serious physical harm, APS staff

would not have been acting outside state law when restraining him. Because Plaintiffs offer no

facts as to J.N.'s behavior at the time APS staff restrained him, the Court has no facts on which

to assume that APS violated state law when it restrained him. And, if APS did not violate NMSA

§ 22-5-4.12, NMPED could not have violated Section 504 of the Rehabilitation Act by failing to

make sure APS complied with NMSA § 22-5-4.12. Thus, even assuming that NMPED did have a

duty to monitor APS's compliance with NMSA § 22-5-4.12, and it breached that duty, Plaintiffs'

failure to allege facts demonstrating that APS actually violated state law is fatal to their claim.

---

[5] The Court notes that because NMSA § 22-5-4.12 applies to all students, not just disabled students, whether J.N. was identified as being disabled when he attended Bandelier Elementary is irrelevant to the question of whether APS violated NMSA § 22-5-4.12 when it allegedly physically restrained him at that school. Whether J.N. had been identified as disabled when he attended Bandelier Elementary, however, does bear on whether physical restraint at that school violated Section 504 of the Rehabilitative Act. Nonetheless, because Plaintiffs have failed to state a claim regardless of how this issue is resolved, the Court declines to address it.

Finally, even assuming that NMPED had a duty to monitor compliance with NMSA § 22-5-4.12, that it failed to meet that duty, and that APS violated NMSA § 22-5-4.12, Plaintiffs fail to state that NMPED's actions discriminated against J.N. and other disabled students by reason of their disabilities. Plaintiffs appear to assert that because students with disabilities are disproportionately subject to physical restraints, and because NMSA § 22-5-4.12 is intended to protect students with disabilities, NMPED's failure to implement and monitor compliance with NMSA § 22-5-4.12 discriminates against students with disabilities by reason of their disabilities. *See* Doc. 1 ¶¶ 36-37, 115-118. Yet, the Complaint only offers conclusory statements to establish what amounts to a disparate impact claim: "NMPED's failure to implement state law on physical restraints discriminates against APS students with disabilities who are disproportionately subject to physical restraints which cause them trauma and harm." Doc. 1 ¶ 117. The Court cannot assume the truth of this conclusory statement, *see Ashcroft*, 556 U.S. at 679, and Plaintiffs offer no additional facts to support their claim that NMPED acted by reason of students' disabilities.

For these reasons, the Court finds that Plaintiffs have failed to state a plausible claim for equitable and injunctive relief against NMPED under Section 504 and will dismiss the claim against NMPED. NMPED asserts that dismissal should be with prejudice. Doc. 20 at 14. The Court disagrees and find that dismissal without prejudice is appropriate because NMPED makes no futility argument and the Court does not know, at this point, whether an amendment would be futile. *See Brereton*, 434 F.3d at 1219 ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant New Mexico Public Education Department's Motion to Dismiss Plaintiffs' Complaint for Failure to State a Claim Upon Which Relief May Be Granted (Doc. 20). Plaintiffs' claim against NMPED is dismissed without prejudice.

Plaintiffs will have thirty days to move to amend their complaint to the extent that they are able to do so consistent with this opinion. Should Plaintiffs move to amend the complaint, the proposed amended complaint must be attached to the motion in compliance with D.N.M.LR-Civ. 15.1.

Finally, because Plaintiffs and APS have reached a settlement, the Court denies without prejudice the Rule 12(b)(6) Motion for Dismissal of Non-IDEA Claims, or in the Alternative 12(c) Motion for Judgment on the Pleadings by Albuquerque Public Schools (Doc. 12) and APS's Motion to Dismiss Claims for Equitable Relief (Doc. 13).


_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE
Presiding by consent