IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

AGATHA and MALCOLM COOPER,
Parents, individually and on behalf of
J.N, Student,

      Plaintiffs,

      v.                                      Civ. No. 19-1141 SCY/SMV

BOARD OF EDUCATION OF
ALBUQUERQUE PUBLIC SCHOOLS,
and NEW MEXICO PUBLIC
EDUCATION DEPARTMENT,

      Defendants.

## MEMORANDUM OPINION AND ORDER
## DENYING MOTION TO AMEND[1]

Plaintiffs Agatha and Malcolm Cooper bring this action individually and on behalf of their son, J.N., a child with autism, who they allege was physically restrained multiple times while attending Albuquerque Public Schools during the 2017-18 and 2018-19 school years. They are suing the Board of Education of Albuquerque Public Schools ("APS") and New Mexico Public Education Department ("NMPED"), but have settled with APS, subject to a fairness hearing. *See* Doc. 49. NMPED, on the other hand, filed a motion to dismiss, which the Court granted on October 14, 2020. Doc. 51. In granting the motion to dismiss, the Court allowed Plaintiffs 30 days to move to amend their complaint consistent with the Court's order. Doc. 51 at 13. Thereafter, Plaintiffs filed the present Motion to Allow Filing of First Amended Complaint, attaching their proposed first amended complaint ("FAC"). Docs. 53, 53-1. NMPED filed a

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 16, 17, 18, 19.

response in opposition, arguing that the Court should deny leave to file the amendment because the FAC would be futile. Doc. 54. The Court agrees with NMPED, finds the amendment futile, and denies Plaintiffs' motion to amend.

## BACKGROUND

The Court provided background facts in its Order granting the motion to dismiss and so will provide only a brief overview here. *See* Doc. 51. These facts are taken as true from Plaintiffs' original, and currently operative, complaint. *See* Doc. 1.

The New Mexico legislature enacted NMSA § 22-5-4.12 of the Public School Code to limit and regulate the use of physical restraints in public school, effective June 2017. Doc. 1 ¶ 41. Over a year later, in July 2018, NMPED enacted a regulation (6.11.2.10(E) NMAC) to implement that state law. Doc. 1 ¶ 42.

J.N. has autism and anxiety and, as of November 13, 2020 when Plaintiffs filed their proposed FAC, was eight years old. Doc. 1 ¶¶ 30, 31. In August 2017, J.N. started kindergarten at Bandelier Elementary School, in the Albuquerque Public Schools District. *Id.* ¶¶ 12, 44. In December 2018, APS moved him to a special education program for students with autism at a different elementary school, Collett Park Elementary. *Id.* ¶ 47. During the 2017-18 and 2018-19 school years, staff at both Bandelier and Collett Park used physical restraints to respond to J.N.'s nonconforming behaviors. *Id.* ¶¶ 50-51.

## STANDARD OF REVIEW

Rule 15 provides that "the court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "The grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006). Given the permissiveness with which courts view motions to amend,

"[r]efusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of the amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999). In other words, "[t]he futility question is functionally equivalent to the question of whether a complaint may be dismissed for failure to state a claim." *Id.* "The party opposing the proposed amendment bears the burden of establishing its futility." *Mackley v. TW Telecom Holdings, Inc.*, 296 F.R.D. 655, 661 (D. Kan. 2014).

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for failure to state a claim upon which the court can grant relief. "[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a complaint does not require detailed factual allegations to survive a motion to dismiss, it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

A court considering whether a complaint fails to state a claim may proceed according to a "two-pronged approach." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). First, a court "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, "[w]hen there are well-

pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

For purposes of this second prong, the Court "accept[s] the well-pled factual allegations in the complaint as true, resolve[s] all reasonable inferences in the plaintiff's favor, and ask[s] whether it is plausible that the plaintiff is entitled to relief." *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013) (internal citations and quotation marks omitted). "A claim is facially plausible when the allegations give rise to a reasonable inference that the defendant is liable." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). The court's consideration, therefore, is limited to determining whether the complaint states a legally sufficient claim upon which the court can grant relief. *See Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The court is not required to accept conclusions of law or the asserted application of law to the alleged facts. *See Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994). Nor is the Court required to accept as true legal conclusions that are masquerading as factual allegations. *See Brooks v. Sauceda*, 85 F. Supp. 2d 1115, 1123 (D. Kan. 2000). The Court must, however, view a plaintiff's allegations in the light most favorable to him. *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013).

## DISCUSSION

In their original complaint, Plaintiffs brought only one claim against NMPED: proposed class action for equitable and injunctive relief based on disability discrimination under Section 504 of the Rehabilitation Act, including an award of attorney's fees and costs. Doc. 1. Section 504 provides that

> No otherwise qualified individual with a disability in the United States . . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity

4

>receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). "To state a claim under Section 504, a plaintiff must prove (1) that he is a handicapped individual under the Act, (2) that he is otherwise qualified for the [benefit] sought, (3) that he was [discriminated against] solely by reason of his handicap, and (4) that the program or activity in question received federal financial assistance." *Cohon ex rel. Bass v. N.M. Dep't of Health*, 646 F.3d 717, 725 (10th Cir. 2011) (internal quotation marks omitted). In other words, Section 504 "requires that an otherwise qualified handicapped individual must be provided meaningful access to the benefits that the grantee offers." *Id.* at 726 (quoting *Alexander v. Choate*, 469 U.S. 287, 301 (1985)).

Plaintiffs' claim against NMPED for disability discrimination in the original complaint can be categorized into three types of allegations: (1) NMPED did not enact any regulations to enforce the 2017 state law (NMSA § 22-5-4.12) until more than a year after the law became effective; (2) when NMPED did finally enact Regulation 6.11.2.10, the regulation did not mirror or properly implement § 22-5-4.12; and (3) NMPED failed to monitor or enforce APS's compliance with § 22-5-4.12. Doc. 1. The Court addressed each allegation in its Order granting the motion to dismiss, finding that Plaintiffs failed to state a claim as to each category. Doc. 51. Plaintiffs' proposed FAC maintains these three allegations but supplements the alleged facts in support of the allegations and, ultimately, their claim for injunctive relief based on disability discrimination. Doc. 53-1. NMPED asserts that Plaintiffs' FAC still fails to state a claim as to each category and that allowing the FAC would therefore be futile. Doc. 54. The Court will address each category in turn.

### 1. Failure To Timely Enact Regulations

In their FAC, as in their original complaint, Plaintiffs allege that "[d]uring the 2017-18 school year, NMPED failed to enact any regulation to enforce NMSA [§] 22-5-4.12 . . . ." Doc. 53-1 ¶ 141; *see also* Doc. 53-1 ¶¶ 47, 78-80, 144. In granting the motion to dismiss as to this claim in the original complaint, the Court noted that Plaintiffs sought injunctive relief ordering changes to NMPED's regulation and its role in implementation and monitoring of § 22-5-4.12. Doc. 51 at 7. In other words, Plaintiffs sought changes to a regulation already enacted. The Court therefore held that Plaintiffs' claim that it took NMPED too long to enact a regulation did not relate to the relief they requested (modification and monitoring of the regulation) and was thus not actionable. Doc. 51 at 7.

Plaintiffs' FAC suffers from this same deficiency. The relief Plaintiffs request is the same they requested in their original complaint: injunctive relief "ordering changes in NMPED's regulations and its role in implementation and monitoring of NMSA [§] 22-5-4.12 in the Albuquerque Public Schools." Doc. 53-1 ¶ 8; *see also* Doc. 53-1 ¶ 145 (listing the equitable relief Plaintiffs seek against NMPED, including a change in the state regulation to mirror state law and state monitoring of APS). Accordingly, Plaintiffs' complaint that NMPED took too long to enact its 2018 regulations does not relate to the relief they request and is thus not actionable.

Plaintiffs also add details in their FAC regarding certain actions NMPED took before the 2017 state law, including a 2006 memorandum offering guidance on the use of physical restraints for students with disabilities, a 2009 NMPED news release on guidance to deal with students with disabilities, and a 2009 working group created by NMPED Secretary of Education regarding restraints and seclusion. Doc. 53-1 ¶¶ 43-46, 68-71, 77, 81. Plaintiffs explain that they included this information to "provide factual context to understand how NMPED's delay

constitutes discrimination on the basis of disability." Doc. 57 at 4. But again, a claim that NMPED failed to timely enact regulations regarding the use of restraints is not actionable given the relief Plaintiffs request (modification and monitoring of the regulation). As the Court stated in its previous Order, seeking changes in a regulation is different than seeking the enactment of a regulation and what Plaintiffs seek in the FAC are changes and monitoring of a regulation already enacted. For these reasons, allowing the FAC as to a claim that NMPED failed to timely enact regulations would be futile.

### 2. Regulations Do Not Mirror And Implement State Law

Next, in their FAC, Plaintiffs seek injunctive relief against NMPED requiring it to change its regulations to mirror the 2017 state law on use of physical restraints (§ 22-5-4.12). Doc. 53-1 ¶¶ 8, 145. To this point, Plaintiffs assert in their FAC that NMPED first enacted regulations in July 2018 and those 2018 regulations did not mirror, and thus did not implement, the 2017 state law and specifically undermined the state law in a number of ways. Doc. 53-1 ¶¶ 75-76, 79.

However, Plaintiffs acknowledge in their FAC that NMPED issued new regulations, effective August 25, 2020, to address § 22-5-4.12. Doc. 53-1 ¶ 136. Plaintiffs explain that the 2020 regulations were promulgated "as a response to this lawsuit filed in 2019 and to correct NMPED's previous failure to enforce [the] state statute intended to protect students from harmful restraint and seclusion" and "are significantly more accurate, lengthier and more specific than the regulations enacted in July 2018." Doc. 53-1 ¶¶ 136-37. Because NMPED has issued 2020 regulations, Plaintiffs' request for injunctive relief to change the 2018 regulations to mirror state law is now moot. Plaintiffs acknowledge as much in their FAC. *See* Doc. 53-1 ¶ 142 ("During the 2018-19 school year, the 2019-20 school year and *continuing until new regulations [were] enacted on August 25, 2020*, NMPED failed to mirror and enforce the state statute . . . .")

7

(emphasis added); *see also* Doc. 57 at 5 (Plaintiffs' reply to their motion to amend, confirming that "Plaintiffs agree that the NMPED's 2020 regulations eliminate the need for this Court to order changes to mirror state law").

However, Plaintiffs also state in their FAC that their request to change the state regulations to mirror state law was only "*largely accomplished* by the NMPED's promulgation of new regulations on August 25, 2020." Doc. 53-1 ¶ 145 n.2 (emphasis added). To the extent Plaintiffs are asserting that the 2020 regulations do not mirror and implement state law, Plaintiffs do not explain how the 2020 regulations are deficient or what changes to the 2020 regulations they seek.[2] Indeed, Plaintiffs' FAC only explains how the 2018 regulations fail to mirror and implement state law and makes no reference to the content of the 2020 regulations. *See* Doc. 53-1 ¶ 75. Because Plaintiffs fail to specifically allege how the 2020 regulations are deficient, they have failed to state a claim that the 2020 regulation do not mirror or implement state law. *See Twombly*, 550 U.S. at 555 (to state a claim, a complaint "requires more than labels and conclusions").

In sum, Plaintiffs' claim that the 2018 regulations fail to mirror state law is moot due to the enactment of the 2020 regulations. And Plaintiffs fail to state a claim that the 2020 regulations do not mirror and implement state law because they provide no information on how the 2020 regulations are deficient. For these reasons, the Court finds that allowing the FAC as to these claims would be futile.

---

[2] Plaintiffs do assert in the FAC that the 2020 regulations "do not set forth a timetable for required reporting to NMPED . . . and so continue to allow for school districts to persist in and hide the use of restraint and seclusion against students with disabilities." Doc. 53-1 ¶ 138. The Court reads this allegation as addressing Plaintiffs' claim that NMPED has failed to monitor and enforce state law, which the Court will discuss in the next section.

Lastly, in their FAC, Plaintiffs seek attorney's fees and costs under the Rehabilitation Act, including "for work done in filing the original lawsuit against NMPED in 2019 which lawsuit caused NMPED to issue new regulations on August 25, 2020 curing, in part, its previous failure to enforce and monitor state law intended to reduce and regulate the use of physical restraint." Doc. 53-1 at 33 ¶ 6. In their reply brief, Plaintiffs clarify that "even if Plaintiffs are denied the right to file the proposed First Amended Complaint, there is still a claim for fees and costs to be considered based on NMPED's issuance of amendments to regulations after the filing of the lawsuit and before the Court's order of dismissal, creating a change in the legal relationship of the parties." Doc. 57 at 11-12. The Rehabilitation Act allows for attorney's fees and costs to the prevailing party. 29 U.S.C. § 794a(b). The out-of-court victory Plaintiffs' litigation produced, however, does not make them a prevailing party for purposes of the Rehabilitation Act's fee provision. The Court found that Plaintiffs' original complaint failed to state a claim under Section 504. Thus, Plaintiffs are not entitled to fees under Rehabilitation Act for the work on their original complaint, even if NMPED later changed its regulations in response to the original complaint. *See Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health and Human Res.*, 532 U.S. 598, 600 (2001) (holding that when a statute allows for an award of attorney's fee and costs to the prevailing party, the term prevailing party does not include a "party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct"). Similarly, the Court presently finds that the proposed FAC fails to state a claim. Therefore, Plaintiffs cannot be considered a prevailing party for purposes of the Rehabilitation Act's fee provision.

### 3. Failure To Monitor And Enforce Compliance With State Law

The last claim for injunctive relief based on disability discrimination alleged in the FAC is Plaintiffs' claim that NMPED failed to monitor APS's compliance with § 22-5-4-12 and failed to enforce compliance with that state law at APS and other public schools. Doc. 53-1 ¶¶ 8, 74, 138, 144-45. Plaintiffs brought this same claim in their original complaint and the Court held that they failed to state a claim. Doc. 51. The Court pointed out four deficiencies with Plaintiffs' original complaint: (1) Plaintiffs failed to state what legal duty NMPED had to ensure that all school districts in the state appropriately implement § 22-5-4.12 in public schools; (2) assuming NMPED had a duty, Plaintiffs failed to specifically state how NMPED breached that duty; (3) assuming NMPED had a duty to enforce § 22-5-4.12 in the schools, and assuming NMPED breached that duty, Plaintiffs failed to state facts to establish that APS's use of restraints on J.N. actually violated § 22-5-4.12; and (4) Plaintiffs failed to state how NMPED's actions discriminated against J.N. and other disabled students by reason of their disability. Doc. 51 at 10-12.

Accepting all facts in the FAC as true, Plaintiffs cured the first two deficiencies and at least come close to curing the third deficiency. First, the FAC adds facts describing the duty NMPED has to enforce the Public School Code. *See* Doc. 53-1 ¶¶ 18, 48, 78 (NMPED has regulatory powers and duties under the New Mexico State Constitution and the responsibility to uniformly enforce the Public Schools Code under NMSA § 22-2-2, including determining policy for operation of all public schools and supervising all school and school officials).

Second, the FAC adds facts regarding NMPED's breach of its duty to enforce § 22-5-4.12. Most of those facts focus on Plaintiffs' assertion that NMPED failed to timely enact sufficient regulations to implement state law. Doc. 53-1 ¶¶ 75, 78, 97, 142. As discussed above,

this argument is moot because NMPED has now enacted regulations that Plaintiffs agree are sufficient. However, the FAC also alleges that NMPED breached its duty to enforce state law by failing to "set forth a timetable for required reporting to NMPED . . . ." Doc. 53-1 ¶ 138; *see also* Doc. 53-1 ¶ 145. In other words, the FAC alleges that NMPED should have set reporting timetables to ensure APS and other schools complied with § 22-5-4.12, but it failed to do so.

Third, the FAC adds some facts regarding the circumstances of the restraints used on J.N. Doc. 53-1 ¶¶ 74, 96. In dismissing the original complaint, the Court pointed out that § 22-5-4.12(A) allows for the use of restraints if a student's behavior presents an imminent danger of serious physical harm to the student or others. Doc. 51 at 11. The Court found that Plaintiffs had not provided enough facts regarding J.N.'s behavior at the time APS staff restrained him to determine whether staff actually violated § 22-5-4.12. *Id.* In their FAC, Plaintiffs attempt to cure this deficiency by alleging that "[a]t the time J.N. suffered restraints, he was ages 5, 6 and 7. He never posed an 'imminent danger of serious physical harm' to any of the adults who restrained him." Doc. 53-1 ¶ 98.

This statement, standing alone, is insufficient to state a claim. First, the statement is the type of conclusory statement the United States Supreme Court found to be insufficient in *Iqbal*, 556 U.S. at 679. Second, the statement does not address whether J.N.'s actions placed himself in imminent danger of serious physical harm. For instance, in describing the circumstances that led to J.N. being restrained, Plaintiffs in the proposed FAC allege "on an unknown date in fall 2018, J.N. was placed in a hold for 5-10 minutes by an Educational Assistant acting with other staff to prevent Student from running off" and "on November 9, 2018, J.N. was restrained on the playground after he had crawled into a tube on the playground structure . . . ." Doc. 53-1 ¶ 74. Although using restraints to prevent a 6-7 year old child from running off may not be necessary

11

to protect others from imminent harm, a 6-7 year old child who runs off places himself in imminent harm. Similarly, Plaintiffs have provided no information through which the Court can assess whether the tube J.N. crawled into on November 9, 2018 placed himself in imminent harm.

Plaintiffs also allege other instances in their FAC in which J.N. was restrained but do not provide the circumstances that led to his restraint. The lack of detail related to the circumstances that led to J.N.'s being restrained creates a close call as to whether Plaintiffs provided enough factual allegations to state a plausible claim that APS staff violated § 22-5-4.12 when restraining J.N. Thus, whether the derivative claim against NMPED (that it failed to make sure APS complied with the state law) is futile is also a close call. *See* Doc. 53-1 ¶ 74. For the purposes of this Opinion, however, the Court assumes Plaintiffs have presented sufficient facts to demonstrate that J.N. was restrained in circumstances where he did not present an imminent threat of danger to himself or others.

The Court makes this assumption because resolution of this issue does not change the ultimate outcome: even if J.N. was restrained in circumstances where he did not present an imminent threat of danger to himself or others, Plaintiffs fail to state how NMPED's actions discriminated against J.N. and other disabled students by reason of their disability, as is required to state a claim under Section 504 of the Rehabilitation Act. Similar to the original complaint, Plaintiffs appear to assert that because students with disabilities are disproportionately subject to physical restraints, and because NMSA § 22-5-4.12 is intended to regulate restraints, NMPED's failure to enforce and monitor compliance with NMSA § 22-5-4.12 discriminates against students with disabilities by reason of their disabilities. *See* Doc. 53-1 ¶¶ 36-37, 78, 80-81, 144. To that point, the FAC adds more details describing NMPED's knowledge, leading up to the

enactment of the 2017 state law, that students with disabilities need to be protected when considering the use of restraints in schools. Doc. 53-1 ¶¶ 42-46, 67-70, 144. Thus, Plaintiffs appear to be making a disparate impact claim: NMPED's failure to monitor compliance with a state law addressed to restraining students had a disparate impact on students with disabilities who are more frequently subjected to restraints; therefore, NMPED discriminated against disabled students by reason of their disabilities.

Yet, even accepting as true that NMPED knew prior to the 2017 enactment of NMSA § 22-5-4.12 that students with disabilities need to be protected from restraints, Plaintiffs offer no further facts to show that, once the state enacted § 22-5-4.12, NMPED's failure to monitor compliance with the state law had a disparate impact on students with disabilities. Indeed, the FAC only offers conclusory statements: "NMPED's failure to implement state law on physical restraints discriminates against APS students with disabilities who are disproportionately subject to physical restraints which cause them trauma and harm." Doc. 1 ¶ 143. The Court cannot assume the truth of this conclusory statement, *see Iqbal*, 556 U.S. at 679, and Plaintiffs offer no additional facts to support their claim that NMPED acted, or failed to act, by reason of students' disabilities. In other words, the FAC does not provide enough facts to make a plausible claim that NMPED's alleged breach of duty, i.e. its failure to enact a reporting timetable related to a state law that is applicable to the use of restraints on all students, discriminated against disabled students by reason of their disabilities.

Nor do Plaintiffs cite any case where a plaintiff has been successful in a disparate impact claim similar to the one they make. The state law at issue is applicable to restraints used on any student, not just a student with a disability. *See* NMSA § 22-5-4.12. Although NMPED might violate the Rehabilitation Act if discriminatory animus toward disabled students motivated it to

13

not better monitor APS, Plaintiffs make no such allegations. *See Patton v. TIC United Corp.*, 77 F.3d 1235, 1246 (10th Cir. 1996) ("The Supreme Court has held that a facially neutral governmental restriction does not deny 'meaningful access' to the disabled simply because disabled persons are more likely to be affected by it" but the law's restriction may be invalidated "if plaintiffs can demonstrate that it was motivated by discriminatory animus."). In other words, Plaintiffs do not claim NMPED's alleged failure to monitor APS was designed to discriminate against disabled students.

Instead, Plaintiffs describe NMPED's alleged failure as neglect. Doc. 53-1 ¶ 78. Thus, Plaintiffs' claim is that NMPED violated the Rehabilitation Act when it neglected to ensure that a school district it regulates followed a state law that is not directed to disabled students and is not associated with the Rehabilitation Act. Plaintiffs have cited no case, and the Court is aware of none, in which a government agency has violated the Rehabilitation Act or a law similar to the Rehabilitation Act (like the ADA) by neglecting to enforce a law not directed to the disabled, even when the government agency knows its neglect could have a disproportionately adverse effect on the disabled. In the absence of specific language in the Rehabilitation Act or binding authority that countenances such a restriction, the Court declines to so extend the reach of the Rehabilitation Act. The Court therefore finds that allowing the FAC as to Plaintiffs' claim that NMPED failed to monitor and enforce § 22.5.4-12 in schools in violation of Section 504 of the Rehabilitation Act would be futile.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion to Allow Filing of First Amended Complaint (Doc. 53). Because the Court previously dismissed Plaintiffs' claim against NMPED without prejudice with leave to move to amend (Doc. 51) and because the Court is now

denying leave to amend as futile, Plaintiffs' sole claim for injunctive relief against NMPED is dismissed with prejudice. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE
Presiding by consent